**Anthony Varbero (AV8833)**
Joseph Mure Jr., & Associates
26 Court Street, Suite 2601
Brooklyn, New York 11242
(718) 852-9100 main
(718) 797-5554 fax
anthonyvarbero@gmail.com

Attorney for Plaintiffs

15 CV 2633

JUDGE RAKOFF

APR 03 2015
U.S.D.C. S.D.N.Y.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
                                                         )
ANASTASIOS P. BELESIS and,                               )
JOSEPH LOUIS CASTELLANO                                  )
                                                         )
                                                         )
                            Plaintiffs,                  )
                                                         )     **COMPLIANT**
        -v.-                                             )
                                                         )     Case No. _____
                                                         )
**MATTHEW LOWERY**                                       )
                                                         )     **JURY TRIAL REQUESTED**
                            Defendant.                   )
-------------------------------------------------------X

Plaintiffs Anastasios P. Belesis ("Belesis") and Joseph Louis Castellano ("Castellano"), collectively ("Plaintiffs-Respondents"), by their undersigned counsel, as and for their Complaint against Defendant Matthew Lowery ("Lowery" and/or "Defendant-Defendant-Claimant"), allege as follows:

### NATURE OF THE ACTION

1. Plaintiffs-Respondents Belesis and Castellano filed this Complaint requesting that the Court grant an Order to vacate the arbitration award issued on January 3, 2015 (the "Award") before the Financial Industry Regulatory Authority's dispute resolution division ("FINRA") arbitration proceeding captioned *In The Matter of the Arbitration Between:* <u>Claimant</u> *Matthew D. Lowery* vs. <u>Respondents</u> *John Thomas Financial, Anastasios P. Belesis,* and *Joseph Louis Castellano,* <u>Case Number</u>: 13-02763 (the "Arbitration"), in favor of Defendant-Claimant

Lowery. In issuing the Award, Sabrina Raquel Scott, ("Scott"), Public Arbitrator, Presiding Chairperson, David F. Rock ("Rock"), Public Arbitrator, and Mohr Ernest Hill, III ("Hill"), Public Arbitrator, (collectively "Arbitrators" and/or "Panel") completely disregarded Georgia's Code Ann., New York Law, and Federal Laws. Under Title 9 United States Code Annotated §10 the Arbitrators exceeded their powers, and so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made, and there was no violation of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), and Exchange Act Rule 10b-5, 17 C.F.R. §240.10b-5, or of any other federal law. The documentary evidence, Defendant-Claimant's Arbitration Statement Of Claim ("SOC") with a course of performance, which conformed to the terms of the agreement between the Defendant-Claimant and John Thomas Financial ("JTF"), clearly establish that Defendant-Claimant never spoke to Belesis or Castellano in their individual capacity. Lowery conceded that he *only* spoke with and relied on his broker David Page ("Page"), who managed Lowery's account. At best, Defendant-Claimant has a claim for breach of contract or breach of fiduciary duty against JTF, and not Belesis or Castellano in their individual capacity.

2. The Award included punitive damages against Belesis and Castellano, is *void ab initio* under the Georgia Code Ann., § 51-12-5.1, and New York Law. Ga. Code Ann., § 51-12.5.1 is applicable in only such torts specified in Ga. Code Ann., none of which the panel found to be the basis to impose such an egregious fine under Ga. Code Ann., § 51-12.5.1. The failure to comply with FINRA discovery rules is simply NOT a tort under Ga. Code Ann., § 51-12.5.1. The proper statute to impose sanctions for failure to comply with discovery rules in Georgia, is Ga. Code Ann., § 9-11-37 (Failure to make discovery), and under the Ga. Uniform Superior Court Rule 6.4 (Failure to Make Discovery and Motion to Compel Discovery). Furthermore,

because the Arbitration panel couched the punitive damages on a failure to comply with discovery, the punitive damages must be vacated.

3. *Assuming arguendo*, even if the Defendant-Claimant can establish that failing to comply with FINRA discovery rules and procedures is a tort under Ga. Code Ann., §51-12-5.1, which it clearly is not, the amount, which may be awarded, shall be limited to a maximum of $250,000.00 under Ga.'s Code Ann., §51-12-5.1.

## PARTIES

4. Plaintiff Belesis is a citizen of New York State, residing in New York County

5. Plaintiff Castellano is a citizen of New York State, residing in Suffolk County

6. Defendant Lowery is a citizen of Georgia, residing in Gwinnett

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action to vacate an award from the FINRA dispute Resolution forum pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10.

8. Venue in the Southern District of New York is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred, and one of the defendants resides in the district where this Court is located

## FACTUAL ALLEGATIONS

**Background**

9. Mr. Lowery is a citizen of Georgia, and opened a new account at JTF, where he indicated in his new account paperwork, which included a New Account Form "NAF") the

following:

    a. Investment objective was speculation;

    b. Risk tolerance was aggressive;

    c. Annual income between $1,000.000 and $2,500.000;

    d. Liquid net worth of $2,500,000 or more;

    e. A total net worth (excluding his house) of $2,500,000 or more; and

    f. Extensive knowledge and experience investing in securities, and private placements; i.e., more than 15 years' experience investing in stocks, bonds, option and mutual funds trading,

    g. David Page ("Page") was Lowery's account executive.

11. Neither the Arbitrators nor Defendant-Claimant's attorney elicited direct testimony from Page before, during, or after the hearing. Furthermore, the Arbitrators declined to question, inquire or take testimony from Page about the relationship with Lowery or any material facts relevant to establish any wrong doing on the Plaintiffs-Respondents.

12. The Arbitrators permitted and required the Arbitration to be telephonic. The telephonic Arbitration hearing lasted for *only* about sixty-minutes. Which leads to the conclusion that Defendant-Claimant did not prove every element of its case at trial, failed to do so, and under the law the Defendant-Claimant must still prove every element of the case.

13. Any losses suffered in Lowery's account are due to market trading, and market risk when investing in private placements.

14. JTF assigned a branch office manager to oversee Lowery's account, and that manager was Mark Greenberg ("Greenberg"), who was assisted by three assistant branch office managers.

15. The Greenberg and assistant branch managers were properly licensed to supervise Page's handling of Lowery's account.

16. Greenberg had the responsibility for reviewing Lowery's account, and taking any action if there were any "red flags" that might have come up regarding the activity in the account.

17. During the period of the time covering the trading at issue in the Arbitration, neither Belesis and Castellano acted in their individual capacity nor were either directly or indirectly responsible for supervising Page, or Lowery's account.

18. Neither Belesis nor Castellano qualified Lowery as an investor; never managed Lowery's account; never made any investment recommendations to him; never provided him any investment advice, and never personally received any commissions or other compensation related to Defendant-Claimant's account. Furthermore, neither Belesis nor Castellano spoke with Defendant-Claimant, ever.

19. During the period of time covering the investments at issue in the Arbitration, however, neither Belesis nor Castellano was in the supervisory chain over Page. JTF was *solely* responsible for the supervisory system in place at the firm, and the systems were reasonable according to industry sales practice requirements, and therefore if there was any failure or negligence, JTF is liable.

20. Over the twelve months, or so that Lowery managed his account with JTF he:

   a. acknowledged receiving all of his confirms and statements in a timely manner;
   b. spoke with Page extensively;
   c. reviewed all the private placement documents, and disclosures
   d. had the opportunity to have the investments reviewed by independent advisors

and attorneys

e. independently and willfully took investment risks.

**The Arbitration**

21. Defendant-Claimant filed the SOC, dated September 23, 2013, in the Arbitration before FINRA. The SOC alleges that JTF, through Page, solicited Lowery to invest. Furthermore, Defendant-Claimant allege that Page and JTF advised Lowery to invest in additional private offerings. What is noticeably missing from the Defendant-Claimant's SOC, is any communication or contact between Lowery and both Belesis and Castellano in their individual capacity. Defendant-Claimant's SOC consists of a disjointed collection of claims, which are mostly pled formulaically by merely reciting elements of causes of action and do not include sufficient facts and specific details to plausibly support its allegations. In particular, Federal Rules of Civil Procedure 9(b) and the relevant case law requires the allegations in the Defendant-Claimant's SOC to be plead with particularity, which was clearly lacking from Defendant-Claimant's SOC. Federal Rules apply because the United States Supreme Court has established that state law is preempted in any one of three ways: (1) explicit; (2) field; and (3) conflict. Therefore, the Defendant-Claimant failed to plead and prove any wrongdoing at the FINRA Arbitration.

**The Hearing**

22. The December 2, 2014 hearing went on as scheduled. Even though the Arbitrators were fully aware, via the emergency Belesis and Castellano were having with inadequate counsel; the Arbitrators modified the hearing from a three-day in person conference, to a sixty-minute telephonic hearing. During the telephonic hearing, Lowery did not claim that: (1) he ever spoke with Belesis or Castellano, (2) that he relied on any actions or statements by

Belesis or Castellano, in their individual or corporate capacity, and (3) undeniably, Lowery did not claim that Belesis or Castellano did or said anything that caused him harm.

23. Second, Defendant-Claimant's counsel made an oral presentation, that Belesis and Castellano should be held personally responsible because Belesis and Castellano allegedly supervised Page; where counsel relied on the fact that Belesis was the Chief Executive Officer of JTF, and Castellano was the Director of Compliance, nevertheless, there was no offer into evidence showing that either Belesis or Castellano actually supervised Page. Nor did counsel offer any evidence showing that Belesis or Castellano controlled Page's conduct or otherwise culpable for Page's conduct.

**The Award**

24. The December 2, 2014 hearing, where Defendant-Claimant appeared with no opposition, lasted about sixty-minutes, resulting in the Award. The Defendant-Claimant was awarded compensatory damages in the amount of $500,000.00 and interest at the Georgia statutory rate; Punitive damages in the amount of $750,000.00, and the Award included hearing fees incurred by Defendant-Claimant. The Award further directed that JTF, Belesis and Castellano were jointly and severally liable for these amounts.

**Misconduct By The Arbitrators**

25. An award will be vacated if it is deemed to have been awarded by the Arbitrators in manifest disregard of the law Under Federal Law Defendant-Claimant still has the burden of proof and obligation to put on a hearing even if the Respondent does not testify. The United States Supreme Court holds that the burden of proof is a substantive aspect of a claim. Furthermore, the burden of proof is part of the very substance of the Defendant-Claimant's claim and cannot be considered a mere incident of a form of procedure.

26. Adhering to the common law guide that the Defendant-Claimant is in the best position to present the requisite evidence should bear the burden of proof, find that the burden of proving the allegations, or failure to perform is on the Defendant-Claimant. Here it is clear that the Arbitrators were required to place the burden of proof on Defendant-Claimant in this case because proving the case is the very substance of the Defendant-Claimant's burden. The Arbitrators patently disregarded the Courts requirements on the Defendant-Claimant's burden are clear because the three-day hearing was condensed to a sixty-minute teleconference call.

27. The Arbitrators failed to require the Defendant-Claimant to prove each and every element of its case during the telephonic hearing, and the Defendant-Claimant, indeed, failed to prove its case. Therefore, the arbitration award should be vacated because the Arbitrators patently disregarded the law.

**New York Requires Defendant-Claimant to put on a hearing even if the Plaintiff-Respondent does not testify.**

28. It is clear that placing the burden on the Plaintiff naturally helps protect against inaccurately finding the defendant liable. This substantive limitation reinforces that every injured plaintiff has the burden to establish the defendant's liability, both for compensatory and punitive damages.

29. The burden required on the plaintiff holds that there is no chance of the defendant being liable unless the plaintiff can meet her burden to establish the elements. Only once an individual plaintiff has established the defendant's liability for its conduct to the plaintiff can the defendant also be punished for that conduct.

30. Under New York law, it is well settled that the Defendant-Claimant must generally show that the Plaintiff-Respondent's conduct is or was a substantial factor in producing

the injury to satisfy the burden of proving the causes of action alleged by the Defendant-Plaintiff in the Arbitration.

31. Here, the Arbitrators declined to question, inquire or take testimony from Page about the relationship with Lowery or any material facts relevant to establish any wrong doing on the Defendants. The Arbitrators permitted and required the arbitration to be telephonic, which only lasted for *only* about sixty-minutes. The Arbitrators treatment of Defendant-Claimant's causes of action as merely incidental, and not prove each and every element of its case during the telephonic hearing, is a clear manifest disregard for Federal law.

32. Therefore, the arbitration award should be vacated because the Arbitrators patently disregarded the law.

**Georgia Law Requires Defendant-Claimant to put on a hearing even if the Plaintiff-Respondent does not testify.**

33. Under the law in Georgia, Supreme Court clearly stated that although only notice pleading is required, plaintiff must still prove every element of its case at trial, and if plaintiff fails to do so, a directed verdict may be rendered by trial court. The law is clear, that a plaintiff has the burden of proving his case, and defendant, even though he may be in a better position to do so, is not required to assist the plaintiff in so doing.

34. In the case a bar, it is clear that the Arbitrators failed to require the Defendant-Claimant to establish any wrong doing on the Plaintiffs-Respondents. The three-day arbitration became a telephonic summation, where the Defendant-Claimant, failed to prove its case.

35. Therefore, the arbitration award should be vacated because the Arbitrators patently disregarded the law.

**Arbitrators' Manifest Disregard for the George Law § 51-12-5.1 Requires The Punitive Damages To Be Vacated.**

36. Defendant-Claimant's boilerplate claim for punitive damages should also be dismissed. Under O.C.G.A. § 51-12-5.1, punitive damages may only be awarded for torts upon clear and convincing evidence that Plaintiffs-Respondents' showed willful misconduct, malice, fraud, wantonness, oppression, for a tortious conduct, and failing to comply with FINRA proceedings, is not a tortious act under O.C.G.A. § 51-12-5.1. So, Defendant-Claimant is not entitled to any punitive damages under the Arbitrators grounds.

37. Moreover, punitive damages cannot be awarded in pure contract cases. Where investors sued the borrower in both tort and contract, the court held that punitive damages could not be awarded since the investors' tort claims had been dismissed and remaining claims sounded wholly in contract. Accordingly, Defendant-Claimant's claim for punitive damages must be dismissed with prejudice.

**Under Georgia Law Punitive Damages Are Inappropriate in This Case**

38. It is clear that under the law in Georgia, specifically, Ga. Code Ann. § 51-1-11.1 specifies that for purposes of liability based in whole or in part on a tort punitive damages are derivative. Failure to comply with FINRA discovery is not a *derivative* issue, and since the Defendant-Claimant cannot recover on his underlying discovery claim as tort as a matter of law, there can be no punitive damages thereon.

39. Furthermore, a claim for punitive damages is derivative of the merits of her tort claims, not failure to comply with FINRA discovery. Because, as discussed above, Respondents are entitled have the punitive damages vacated.

40. Moreover, even if one of Defendant-Claimant's tort claims was proven, which is highly unlike in a sixty-minute teleconference, Defendant-Claimant did not and cannot produce

any evidence sufficient to create a triable issue of fact on the issue of punitive damages. Under Georgia law, punitive damages may be awarded only in such *tort* actions in which it is proven by *clear and convincing evidence* under O.C.G.A. § 51-12-5.1. This is a heavy burden to meet and, given the evidence in this case, or lack thereof, it is insurmountable for Defendant-Claimant, and the burden has not been met.

41. The Award and trial transcript is void of any evidence that the Defendant-Claimant produced any evidence that Respondents engaged in any activity demonstrating willful misconduct, malice, fraud, wantonness, oppression, of a recognizable tort, or that entire want of care which would raise the presumption of conscious indifference to consequences for tortious conduct.

42. To the extent that Defendant-Claimant might allege that Respondent's actions were negligent, proving negligence is insufficient to maintain a claim for punitive damages. As the Georgia Supreme Court made clear something more than the mere commission of a tort is necessary for the imposition of punitive damages.

**Punitive Damages Are A Derivative Claim Under Georgia Law**

43. It is well settled that punitive damages are derivative of substantive claims, and failing to recover on an underlying tort claim necessarily prohibits punitive damages as a matter of law. Because Defendant-Claimant's substantive claims fail because failing to comply with FINRA discovery, is not a tort in Georgia, Defendant-Claimant cannot recover punitive damages in this action. Punitive damages may be awarded only in *tort* actions under O.C.G.A. § 51-12-5.1. As result, Respondents are entitled to have the Arbitrators Award for punitive damages vacated.

**Georgia legislature limited the maximum amount of punitive damages.**

44. In enacting O.C.G.A. §51-12-5.1(g), the legislature limited the maximum amount of punitive damages that can be awarded. The legislature has the right to do just that because punitive damages can be lawfully eliminated ... then they may be lawfully circumscribed. Georgia's Supreme Court upheld the statutory cap on punitive damages contained in O.C.G.A. § 51-12-12-5.1(g).

45. At the hearing of this case on December 2, 2014, the Arbitrators awarded punitive damages in excess of the $250,000.00 cap set by the Georgia legislature. Given that the Arbitrators awarded punitive damages in excess of the statutory maximum amount of $250,000.00, this Honorable Court can reduce that Award to the statutory maximum prior to entering Judgment. Because the jury found that none of the Plaintiff-Respondents had acted with the specific intent to cause harm, the Arbitrator should have limited the total punitive damages award to $ 250,000.

46. In the instant case, Defendant-Claimant cannot be awarded a judgment of more than $250,000 in punitive damages because: (1) Georgia law provides that the statutory cap for punitive damages of $250,000 is the maximum amount of money that the finder of fact may award to any one plaintiff as punitive damages -- regardless of the number of defendants, and regardless of the number of theories or recovery arising out of the same transaction, occurrence, or series of transactions or occurrences. Because any tort action not provided for by subsection (e) or (f) of this Code section in which the trier of fact has determined that punitive damages are to be awarded, the amount which may be awarded in the case shall be limited to a maximum of $250,000.00"). Furthermore, the Arbitrators' Award of punitive damages in this case was based on the Respondents' failure to comply with discovery, which is *NOT* a tort under the O.C. G.A.

As punitive damages are awarded not as compensation to a Defendant-Claimant, a part of the statute the courts must adhere to, the effect is exactly the same. Therefore, in light of the foregoing, the $250,000 cap of O.C.G.A. § 51-12-5.1(g) applies and this Honorable Court must reduce the punitive damage award in the Award to $250,000.

**Federal Law**

47.     Under the guideposts of awarding punitive damages the court must consider whether: the harm was physical rather than economic. It is clear in this case that the injury alleged in Lowery's account was only economic, and not physical. The Arbitrators' disregard of the most important indicium of a punitive damages award's reasonableness because there was no tortious conduct evinced establishing that Belesis and/or Castellano had an indifference to or a reckless disregard of the health and safety of Lowery; even more so that the handling of Lowery's account by Page, was an isolated incident, and the alleged harm did not result from intentional malice, trickery, or deceit by the Plaintiffs-Respondents, but was due to stock market conditions of the investments.

48.     The Arbitrators' award is void of any reference to establish that Beleisis and Costellano's conduct was reprehensible under the United States Supreme Court's test for punitive damages. In consideration of the facts and circumstances surrounding the Lowery, Page and JTF's agreements, particularly their mutual assent to the terms under preexisting contracts, and settlements, Defendant-Claimant's actions against Belesis and Castellano is not created under federal law, nor does Defendant-Claimants right to relief under New York or Gerogia law. The Court held punitive damages should only be awarded if the defendant's culpability ... is so

reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

49. Furthermore, the U.S. Supreme Court held that the Due Process Clause of the Fourteenth Amendment prohibits the imposition of ... arbitrary punishments on a tortfeasor; the reason is that elementary notions of fairness enshrined in constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a state may impose. In consideration of the facts and circumstances surrounding the agreement between Lowery and JTF, Respondents Belesis and Castellano did not have prior notice that the Panel would award punitive damages against him under the Ga. Code Ann., and therefore Respondent's Due Process Rights were clearly violated.

50. The Panel's punitive award is unlike compensatory damages, which are intended to redress a defined loss between a plaintiff and a defendant, punitive damages are intend to punish especially reprehensible conduct and deter its future occurrence.

**New York Law**

51. Given the underlying purpose for punitive damages, New York state courts have long recognized that in order to recover punitive damages, a plaintiff must show, by clear, unequivocal and convincing evidence ... egregious and willful conduct that is 'morally culpable, or is actuated by evil and reprehensible motives.

52. The law is also clear in New York that punitive damages were not recoverable under a stock purchase agreement. Since the Defendant-Claimant's action in this case was a breach of contract and alleged that Page's failure of stock perform and contractual obligations the mere allegation that alleged breach of contract was maliciously intended or constituted

willful misconduct did not render a breach of contract claim a separate and independent tort claim. Furthermore, under New York law, "punitive damages are unavailable in breach of contract actions involving only private rights.

53. It is clear from the Defendant-Claimant's SOC, that Lowery is an investor, and purported investors in a company failed to state a claim for punitive damages in a breach of contract suit, absent any allegation of conduct aimed at the general public is not recoverable.

54. Therefore, Lowery cannot recover on his breach of contract claim by couching it under some other tort claim.

**No Direct and control person liability**

55. While review in this regard is "highly deferential" to the arbitrators, an arbitration award will be vacated when a party clearly demonstrates that the panel intentionally defied the law.

56. The Defendant-Claimant's SOC failed to allege any factual occurrence that Plaintiffs-Respondents Belesis and Castellano were responsible for the account. Indeed, Defendant-Claimant's only factual allegation against Respondents was that the superiors and control person of JTF failed to "contact Lowery to discuss his account investments. Thus, the Arbitrators finding that Belesis and Castellano are liable for Lowery's account is clearly a disregarded the requirements for a claim under 10b-5.

57. A claim alleging a violation of 10b-5 requires proof of scienter, defined as a mental state embracing intent to deceive, manipulate, or defraud. Negligence is not a sufficiently culpable state of mind to support a section 10(b) civil violation. Here, the Arbitrators clearly disregard the scienter requirement and the law when ruling Belesis and Castellano are liable. Belesis and Castellano's request for an Order to vacate the Arbitration Award should be granted

even if the Arbitrators' holding rested on derivative liability because they manifestly disregarded the law. Control person liability arises from Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a). Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly induce the act or acts constituting the violation or causes of action. To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud. The Second Circuit established a two-part inquiry to determine derivative liability as a control person. First, the court must determine whether the nature of the relationship between the alleged controller and the controlee is such that the controller possesses the actual authority to influence and direct the actives of the primary wrongdoer. Second, even if the controller has such authority, a respondent is not liable unless he is also a culpable participant in the fraud.

58. Here, the Arbitrators failed to recognize or address any wrongdoing on the part of Page, the primary wrongdoers in the case. Second, a finding of control person liability requires an individuated determination of a person's control of the primary violator as well as a person's particular culpability. Assuming *arguendo*, the arbitrators found Respondents' to be control persons, they did so arbitrarily.

59. Third, panel disregards the culpable participation as an element of claim. The Arbitrators' interpreted the law to require Section 20(a) Defendant-Claimant to plead culpable participation, meaning by alleging facts indicating that the controlling person knew or should

have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct. Here, the Arbitrators relied on no evidence that would support the Respondents as being culpable participants.

**Respondeat Superior**

60.   Under New York law, the doctrine of *respondeat superior* is simple- the employer is liable for the wrongful conduct of its employees, done in the course of the employee's official duties, for the benefit of the employer and consistent with the standards, rules and procedures of the employer.

61.   The theory is that the employer should, as a required cost of doing business, in an appropriate case, compensate a party harmed by an employee who was acting not on his or her own behalf, but in the employer's service [citation omitted]"). Therefore, any negligence or wrongdoing by Page, falls on the shoulders of JTF, and not Plaintiffs-Respondents Belesis or Castellano.

62.   While the doctrine holds *employers* vicariously liable for the acts of employees, *it does not apply to executive personnel who fall into the category of employees.* Belesis -the CEO of JTF during the time Defendant-Claimant's account was allegedly being mishandled by Page was not an employee of JTF, but independent contractors. Defendant-Claimants do not allege in the Statement of Claim that Belesis directly employed or paid Page, nor did they offer any evidence at the hearing showing that Belesis individually, as opposed to JTF, was Page's employer because Page was an independent contractor. This *independent contract* arrangement is a critical fact, which the Arbitrators simply ignored, they should have insisted on proof on the issue that Belesis and Castellano personally

employed Page. Belesis and Castellano are thus not subject to liability under the doctrine of *respondeat superior*. The law is clear on *respondeat superior*, and the Arbitrators disregard it.

**Arbitrators Display Bias Against Belesis and Castellano**

63. The Arbitrators' manifest disregard of the law and the facts that damages are not recoverable for an ordinary breach of contract is further evidence of the bias against Belesis and Castellano.

64. At its very essence, this lawsuit is merely the recovery of an investment in a highly aggressive and speculative account that did not pan out. However, because JTF is a dissolved entity and Defendant-Claimant has little chance to collect from JTF, Defendant-Claimant concocts an elaborate scheme to enable it to try to recover money from the Respondents in their individual capacity.

65. The simple reality of the transactions with the Defendant-Claimant his broker Page and JTF, is a cause of action for breach of contract. Plaintiff controlled his brokerage account at all times, and lost money in the stock market. Defendant-Claimant does not allege in his statement of claim that he invested with Belesis or Castellano in their individual capacities. Defendant-Claimant has sufficiently stated a cause of action to recover damages for breach of contract against JTF by alleging all of the essential elements: to wit, the existence of a contract, the Defendant-Claimant's performance pursuant to that contract, the Plaintiffs-Respondents' breach of their obligations pursuant to the contract, and damages resulting from that breach.

66. The Arbitrators Awarded the Defendant-Claimant over $1,200,00.00 in damages against Plaintiffs-Respondents Belesis and Castellano, in less then one hour. To further see the Arbitrators' bias, is that almost 60% of the Award is punitive. Without *bias* from the Arbitrators,

the Award of over $1,200,000.00 is inconceivable on the facts. A reasonable arbitrator would not make an award of over $1,200,000 a one-hour telephonic call, where the Defendant-Claimant did not even meet its burden of proof on any of its claims.

67.     It is clear on the egregious Award, that the Arbitrators were biased. Therefore, the Award should be vacated.

### As And For A First Cause of Action:
### (Order to Vacate FINRA Arbitration Award)

68.     Plaintiffs realleges and incorporates by reference each allegation contained in the paragraphs above, and by reference repleads and incorporates then as though fully set forth here.

69.     Arbitrators' showed a manifest disregard for the law

70.     Arbitrators' showed bias towards Plaintiffs

71.     Arbitrators' acted outside of their duties

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully requests the Court for an Order vacating the FINRA Arbitration Award in whole or part on the grounds that the Arbitrators impermissibly exceeded their contractual authority, bias, and manifest disregard for the law, and for any other and further relief as the Court deem just and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Respectfully submitted, this 3rd day of April, 2015.

JOSEPH MURE JR., & ASSOCIATES

*signature*

**Anthony C. Varbero (AV8833)**
*anthonyvarbero@gmail.com*
Attorney for Plaintiffs

26 Court Street, Suite 2601
Brooklyn, NY 11242
(718) 852-9100
(718) 797-5554